

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:11cr9-W

UNITED STATES OF AMERICA )
)                           **BILL OF INDICTMENT**
)
v.                               )        Violations: 18 U.S.C. § 1589
)                    18 U.S.C. § 1592
LUCINDA LYONS SHACKLEFORD        )
)

### THE GRAND JURY CHARGES:

### INTRODUCTION

1.    On or about June 22, 2009, as part of the United States Department of Health and Human Services's ("HHS") Family Reunification Program, defendant LUCINDA LYONS SHACKLEFORD ("SHACKLEFORD"), a United States citizen who lived in Charlotte, North Carolina, caused victim CRB, an undocumented alien who had not turned eighteen years old, to move into her residence prior to the decision of an immigration judge on his immigration status in the United States.

2.    Under the terms of the HHS Family Reunification Program agreement, signed on or about February 27, 2009, SHACKLEFORD promised to care for victim CRB and provide, among other things, "proper physical care and maintenance, including but not limited to suitable living accommodations, food and clothing."

3.    SHACKLEFORD also entered into a side-agreement with victim CRB's father in which she required victim CRB's father to pay SHACKLEFORD twelve hundred dollars ($1,200) plus certain expenses.

4.    Under the terms of the HHS Family Reunification Program -- administered through Lutheran Family Services ("LFS") in Charlotte, North Carolina -- victim CRB could not work and was scheduled to visit with his father on weekends. Before victim CRB moved into SHACKLEFORD's residence, an LFS case worker conducted a home visit and communicated these program terms to SHACKLEFORD.

5.    Soon after victim CRB moved into SHACKLEFORD's residence SHACKLEFORD told CRB that he owed her $450 and required CRB to work. SHACKLEFORD arranged for victim CRB to clean approximately 60 yards in the trailer park where SHACKLEFORD lived, and SHACKLEFORD demanded nearly all of the money that victim CRB earned.

1

6.    SHACKLEFORD also forced victim CRB to perform work for which he was not paid, including cleaning her mobile home, working on her boyfriend's vehicle, and selling beer, snacks and ice cream to trailer park residents. SHACKLEFORD required victim CRB to sleep near the residence's door at night so that he could serve the persons, some of whom came as late as 1:00 a.m. in the morning, who wanted to buy the goods that SHACKLEFORD sold.

7.    SHACKLEFORD failed to provide adequate food for victim CRB and did not allow his father to come to her residence to give food to victim CRB.

8.    In or around July 2009, SHACKLEFORD asked an LFS case worker whether victim CRB could mow grass to earn "pocket change," and the case worker reminded SHACKLEFORD that victim CRB could not take any form of employment.

9.    During the time that victim CRB lived with SHACKLEFORD, she repeatedly threatened to report victim CRB and his father, who also lacked legal status to remain in the United States, to law enforcement authorities and immigration officials if victim CRB failed to work and give her money as demanded. Though victim CRB knew that he was not supposed to work and did not owe the demanded monetary amounts to SHACKLEFORD, victim CRB continued working for and giving money to SHACKLEFORD because he feared she would follow through on her many threats to have him and his father jailed and deported.

10.    On or about August 20, 2009, during an argument over victim CRB's wish to leave the residence and visit with friends, SHACKLEFORD struck victim CRB. Victim CRB then left SHACKLEFORD's residence and did not return.

11.    After victim CRB left SHACKLEFORD's residence, SHACKLEFORD placed repeated telephone calls to victim CRB and his father and threatened to call law enforcement authorities and immigration officials if victim CRB did not return to her residence. From on or about August 21, 2009 to on or about August 23, 2009, SHACKLEFORD called victim CRB approximately 70 times. SHACKLEFORD also directed her boyfriend, who spoke Spanish, to call the victim's father and warn him that he needed to return victim CRB to her residence or she would contact law enforcement authorities and immigration officials.

12.    During one of SHACKLEFORD's telephone calls to victim CRB, she informed him that she still possessed his birth certificate and that this possession would make it easier for him to be deported or jailed.

2

## COUNT ONE

13.    The Grand Jury realleges and incorporates by reference the Introduction to this Bill of Indictment.

14.    From on or about June 22, 2009 and continuing to on or about August 20, 2009, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

### LUCINDA LYONS SHACKLEFORD

knowingly and willfully did obtain and attempted to obtain the labor and services of victim CRB by means of serious harm and threats of serious harm to victim CRB or another person and by means of the abuse and threatened abuse of law or legal process.

All in violation of Title 18, United States Code Section 1589(a).

## COUNT TWO

15.    The Grand Jury realleges and incorporates by reference the Introduction to this Bill of Indictment and the preceding Count.

16.    From on or about June 22, 2009 and continuing to the present day, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

### LUCINDA LYONS SHACKLEFORD

knowingly did and attempted to conceal, remove, confiscate, and possess a government identification document, that is, victim CRB's birth certificate, in the course of a violation of, and with the intent to violate, 18 U.S.C. § 1589.

In violation of Title 18, United States Code Sections 1592(a)(1) and (a)(2).

A TRUE BILL:

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

KENNETH M. SMITH
ASSISTANT UNITED STATES ATTORNEY

3